# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | :     **1:95-CR-204** |
| | : |
| **v.** | : |
| | :     **(JUDGE MANNION)** |
| **DERRICK CRUZ,** | : |
| **Defendant** | : |

## MEMORANDUM

On April 7, 2020, defendant Derrick Cruz filed, *pro se*, a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i) regarding his 135-month sentence due to the COVID-19 pandemic. (Doc. 346).[1] In particular, Cruz seeks the court to immediately release him from confinement in prison at FCI-Schuylkill due to his fear that if he contracts the COVID-19 virus in prison he may suffer dire consequences due to his serious medical conditions. The government filed its brief in opposition to Cruz's motion on April 14, 2020. (Doc. 350).[2]

---

[1]Since the court stated the background of this case in its July 12, 2019 Memorandum deciding Cruz's motion for a reduction of his sentence under the First Step Act of 2018, (Doc. 342), it does not fully repeat it herein.

[2]Although Cruz's reply brief is not due until on April 28, 2020, due to the court's lack of jurisdiction, due to exigent circumstances, and due to the court's recommendation to the BOP to give Cruz immediate consideration for his placement in home confinement, the court will not wait for a reply brief.

1

After considering Cruz's motion and the briefs of the parties, the court will dismiss his motion without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies. However, the court will recommend that the BOP give Cruz immediate consideration for placement in home confinement.

## I.   BACKGROUND

Cruz was found guilty by a jury of conspiracy to distribute and possess with intent to distribute more than 50 grams of a mixture or substance containing cocaine base known as crack cocaine and cocaine, in violation of 21 U.S.C. §§841(a)(1) and 846, of distribution and possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base known as crack cocaine, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(A)(iii), and money laundering in violation of 18 U.S.C. §1956(a)(1)(A)(i). The jury did not make findings with respect to the type or quantity of controlled substances Cruz possessed and distributed. During the relevant time, the statutory penalty for a drug offense involving 50 grams of crack cocaine under 21 U.S.C. §841(b)(1)(A)(iii) was a minimum of 10 years and a maximum term of life, with a minimum term of 5 years supervised release.

In the PSR, the Probation Office determined that Cruz should be held responsible for more than 1.5 kilograms of crack cocaine which, under the Sentencing Guidelines in effect in 1995, resulted in a base offense level of

38. The PSR also found that Cruz should be given a 2-level enhancement because dangerous weapons were possessed, a 4-level enhancement based on his role in the offense, and a 2-level enhancement for obstruction of justice. Thus, the PSR determined that Cruz's total offense level was 46, which became an offense level of 43, the highest in the Sentencing Table. Cruz's criminal history category was found to be IV and, combined with a total offense level of 43, his Guideline term was life imprisonment.

Cruz was originally sentenced on May 1, 1996. The court found the amount of drugs involved with Cruz's offenses was between 50 grams to 150 grams of crack cocaine, resulting in a base offense level of 32. The court also eliminated the 2-level enhancement for obstruction of justice. The court included a 2-level enhancement for Cruz because dangerous weapons were possessed, and a 4-level enhancement based on his role in the offense. Cruz's total offense level was 34. Based on Cruz's offense level of 34 and with a criminal history category of IV, his guideline range was 324 to 405 months imprisonment. The court then sentenced Cruz to 324 months imprisonment on Counts 1 and 2, the drug offenses, and 240 months imprisonment on Count 6, money laundering, to run concurrently, followed by a 5-year term of supervised release.

Subsequently, the court reduced Cruz's sentence to 262 months pursuant to Amendment 706. Cruz's sentence was further reduced to 168 months under Amendment 750. Finally, Cruz's sentence was reduced to 135 months, his current term, pursuant to Amendment 782.

3

On July 12, 2019, the court granted Cruz's motion for reduction of sentence under the FSA to the extent that the court reduced his 5-year term of supervised release to four years. However, the court denied Cruz's motion for a reduction of his current 135 month sentence under the FSA. (Doc. 342).

On January 24, 2020, Cruz filed a Motion for Placement in a Halfway House. (Doc. 344). On March 26, 2020, the court issued an Order and deferred to the BOP regarding the appropriate halfway house placement for Cruz but it recommended "specific consideration of a more extended time in halfway house placement for Mr. Cruz as a means to facilitate successful re-integration following his lengthy incarceration." (Doc. 345).

## II.   DISCUSSION

In his present motion, Cruz seeks his immediate compassionate release from prison under 18 U.S.C. §3582(c)(1)(A)(i). Cruz requests the court to allow him to serve the remainder of his sentence in home confinement at his mother's house in Lawrence, Mass., subject to electronic monitoring, stating that he is at a higher risk if he contracts the COVID-19 virus based on his age (44) and his "serious chronic medical condition[s]", namely, immune system disease and kidney failure, as well as stage 5 Lupus, asthma, and "membranous nephropathy." For support Cruz filed Exhibit A, (Doc. 347), which are copies of his medical records from various hospitals in which he received treatment for his conditions during his incarceration. Despite the fact that FCI-Schuylkill is providing medical care

4

for Cruz's conditions at outside hospitals when needed, he contends that his conditions will be better managed from his mother's home and that he is receiving "inadequate medical treatment at [the prison]." Further, Cruz points out that he has served 79% of his full prison term, that he is eligible for home detention September 18, 2020, and that his BOP projected release date is March 18, 2021. At present, Cruz states that he has served 24 years and 11 months in prison. He cites to his Exhibit B, (Doc. 347 at 39-42), for support of his above stated contentions.

Based on his detailed circumstances, Cruz contends that his medical conditions present "extraordinary and compelling" reasons justifying his compassionate release under §3582(c)(1)(A)(i). In particular, Cruz claims that "extraordinary and compelling reasons" warrant a reduction of his sentence since he has recognized medical conditions putting him at a higher risk if he does contract COVID-19, such as "people with a condition that affect their lungs, heart, kidneys, immune system." Nonetheless, Cruz does not allege that he has been exposed to the COVID-19 virus at FCI-Schuylkill and he does not dispute the substantial steps identified in the government's brief that the BOP is taking to protect the health and safety of both inmates and staff at all of the federal prisons.

Regardless, since Cruz has not yet presented his request for compassionate release to the BOP, it must be dismissed for lack of jurisdiction, as the government argues, since Cruz has not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a

defendant seeking compassionate release present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). *See also* United States v. Raia, --- F.3d ---, 2020 WL 1647922 (3d Cir. April 2, 2020).

Thus, the court cannot address whether Cruz has demonstrated that "extraordinary and compelling reasons" justify his compassionate release from prison since he has not exhausted his administrative remedies with the BOP as required. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [Cruz] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence."); Raia, --- F.3d ---, 2020 WL 1647922, *1 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. § 3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.Ks. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide

whether he has established that there are 'extraordinary and compelling reasons' why he should be released.").

Further, Cruz does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. *See* Zukerman, 2020 WL 1659880, *3. Rather, he merely speculates that he may be exposed to COVID-19 if he comes into contact with someone at the prison who has the virus and he speculates that he would not receive proper medical care from the BOP if he did contract the virus.

As the Third Circuit in Raia, 2020 WL 1647922, *2, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id*.

In the present case, it must also be noted that Cruz does not allege that he has contracted COVID-19 and he has not suffered any medical consequences from the virus since the pandemic started in the United States. Additionally, while the government concedes that Cruz's Exhibit A medical records, (Doc. 347), "indicate that the defendant has medical conditions that require genuine medical monitoring and treatment", these

7

exhibits also "establish that F.C.I. Schuylkill is appropriately attending the defendant's needs by treating him when they can and taking him to the hospital for appointments and treatment when a higher level treatment is necessary." (Doc. 350). Indeed, the 42-pages of medical records Cruz submitted appear to indicate that he is receiving proper medical care at FCI-Schuylkill.

Moreover, Cruz's reliance on The Coronavirus Aid, Relief, and Economic Security Act, ("CARES Act"), which was signed into law on March 27, 2020, is misplaced. Cruz states that section 12003(b)(2) of the Act allows "inmates with serious medical conditions to be released to Home Confinement [for] the remainder of [their] sentence."

The government states that the CARES Act "expands the authority of the Director of the Bureau of Prisons 'as the Director deems appropriate' to place a prisoner in home confinement for the shorter of 10 percent of the term imprisonment of that prisoner or 6 months under 18 U.S.C. §3624(c)(2)." (Doc. 350 at 12-13). The government's contention is incorrectly stated. Actually, Section 602 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), codified at 18 U.S.C. §3624(c)(2), "allows the [BOP] to 'place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months' and [it] instructs BOP, to the extent practicable, to 'place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.'" United States v. Carr, 2020 WL 1815910, *1 (D.Co.

8

April 10, 2020). The CARES Act in turn then provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2).

Despite misstating the current authority of the Bureau of Prisons, the government is correct that "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." (Id. at 13).

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

As such, the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the

9

maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted). Thus, "[c]ourts … do not have power to grant relief under Section 12003 of the CARES Act." *Id.*

Notably, Cruz does not indicate that he requested a transfer to home confinement to the warden at FCI-Schuylkill pursuant to the CARES Act. In short, since Cruz has not exhausted his mandatory administrative remedies with the BOP with respect to his motion for compassionate release pursuant to the First Step Act of 2018, 18 U.S.C. §3582(c)(1)(A), the court will dismiss his motion *without prejudice* for lack of jurisdiction. See United States v. Engleson, 2020 WL 1821797, *1 (S.D.N.Y. April 10, 2020) (court held that since defendant did not make a request to the warden of his facility to bring a motion for compassionate release, "the statutory requirement is not met, and the Court may not grant relief under [§3582(c)(1)(A)].) (citation omitted); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("When

a defendant fails to satisfy Section 3582(c)(1)(A)'s exhaustion requirement, a court is 'without jurisdiction to entertain [defendant's] request for compassionate release.'") (citations omitted); Boyles, 2020 WL 1819887, *2 (same); Raia, --- F.3d ---, 2020 WL 1647922, at *2 (Third Circuit found that the defendants' failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release ….").

Finally, as the court in Engleson, *id.*, stated "[a]lthough the Court is not empowered to reduce [Cruz's] sentence under [§3582(c)(1)(A)], it is certainly free to recommend to the [BOP] that it allow [Cruz] to be immediately transferred to home confinement." As aptly stated by the court in Engleson, *id.*, "[w]hile recognizing that the ultimate decision of whether to release an inmate to home confinement rests with the BOP, the Court recommends that – in light of [Cruz's] age, personal medical history [based on the evidence Cruz submitted that shows his medical conditions put him at a higher risk of experiencing serious complications from COVID-19], the relative proximity of his expected release date, and the public health and safety considerations raised by the ongoing pandemic – the BOP consider promptly placing [Cruz]

11

in home confinement in order to mitigate [Cruz's] health risk, pursuant to 18 U.S.C. §3624(c)(2) and the CARES Act."

### III. CONCLUSION

Based on the foregoing, Cruz's motion for compassionate release to home confinement pursuant to 18 U.S.C. §3582(c)(1)(A)(i), (Doc. 346), will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction since he has not exhausted his administrative remedies with the BOP. The court will also recommend that the BOP immediately consider placing Cruz in home confinement. An appropriate order will follow.

                                       s/ *Malachy E. Mannion*
                                    **MALACHY E. MANNION**
                                    **United States District Judge**

**Dated: April 17, 2020**
95-204-02